# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 5, 2022

Lyle W. Cayce
Clerk

No. 21-30225

Paradies Shops, L.L.C.,

*Plaintiff—Appellant/Cross-Appellee*,

*versus*

Brothers Petroleum, L.L.C.,

*Defendant—Appellee/Cross-Appellant*,

_____

Brothers Petroleum, L.L.C.,

*Plaintiff—Appellee/Cross-Appellant*,

*versus*

Paradies Shops, L.L.C.,

*Defendant—Appellant/Cross-Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:20-CV-1278, 2:20-CV-3260

Before Richman, *Chief Judge*, and Higginbotham and Elrod,
*Circuit Judges*.

Per Curiam:*

Paradies Shops ("Paradies") plans and operates retail concessions at airports. Brothers Petroleum ("Brothers") is a convenience store in the New Orleans metro area. Paradies dropped Brothers as one of its proposed brands in the retail space for the Louis Armstrong New Orleans International Airport ("the airport"). Brothers demanded arbitration while Paradies sought a declaration that there was no arbitration agreement and moved for a preliminary injunction under 28 U.S.C. § 1651 pending trial of that decision. There was no trial. In denying the injunction, the district court found there was an enforceable contract to arbitrate and refused to stay the arbitration. The district court then declined to revisit the issue of whether there was an agreement to arbitrate after arbitration concluded. Accordingly, we remand so that the district court can determine whether there was an arbitration agreement.

## I.

In 2016, the airport solicited bids for concessions for a new terminal. Paradies began negotiating an agreement with Brothers to include a Brothers convenience store in its bid to the airport. Paradies provided Brothers the following documents: a letter of authorization ("LOA"), an addendum to the LOA ("Addendum"), and a non-disclosure agreement. "Exhibit B Form of License Agreement" from the Addendum included an arbitration provision.[1]

In October 2016, Paradies emailed an initial version of the documents to Brothers requesting immediate signature for all the documents aside from

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

[1] The arbitration provision required that "[i]f any dispute arises under this Agreement, the parties shall seek to resolve any such dispute between them . . . through binding arbitration in New Orleans, Louisiana."

No. 21-30225

Exhibit B. Exhibit B was marked as "[r]eview and comment but not required to be submitted with our proposal."

On November 1, Brothers signed all the documents, including Exhibit B. That same day, Karen Suttle, in-house counsel for Paradies, emailed Brothers clarifying that "we won't execute the License now—only if we win. The LOA and Addendum (which includes the license as a template) are the controlling documents." A third-party who was facilitating communications between the parties requested that Suttle "[h]old the License agreement until Paradies win[s] the bid but a blank copy should be attached to the LOA." Suttle then provided the third-party with corrected copies of the documents including the "Addendum to LOA (fully executed with form of negotiated License attached)." Paradies won the airport bid in 2017. Over the next nearly two years, Paradies and Brothers continued to work on the layout of the convenience store.

In 2019, Paradies learned that two Brothers principals were indicted on six dozen federal criminal counts, including charges related to their operation of the Brothers stores. Suttle wrote Brothers informing them that Paradies decided "to rescind the licensing opportunity set forth in the Letter of Authorization and associated Addendum dated October 31, 2016." Brothers then filed a demand for arbitration pursuant to Exhibit B. In July 2019, Paradies filed a declaratory judgment action arguing that there was no arbitration agreement.[2] In May 2020, Paradies sought to enjoin the arbitration proceeding pending the resolution of the declaratory judgment

---

[2] The action was originally filed in Georgia state court. The action was then removed to the United States District Court for the Northern District of Georgia and transferred to the United States District Court for the Eastern District of Louisiana.

No. 21-30225

action. After a hearing, the district court denied Paradies's motion for injunctive relief.

Because the final arbitration hearing was set for July 2020, Paradies appealed the district court's denial of injunctive relief. This Court dismissed the appeal for lack of jurisdiction. The arbitration proceeded, and the arbitrator entered a final award in favor of Brothers in October 2020. In district court, Brothers moved to confirm the arbitration award while Paradies moved to vacate the arbitration award. The district court modified the arbitrator's final award in part. Both parties appealed.

Paradies argues that the district court erred in not granting Paradies's motion to vacate as there was no arbitration agreement. Brothers argues that the district court erred in modifying the arbitrator's final award and in considering a letter from the airport's general counsel suggesting that the airport would not allow Paradies to use Brothers' "marks," or logos and branding, as the letter was not presented in the arbitration proceeding.[3]

## II.

In reviewing the district court's denial of a motion to vacate an arbitration award, we review de novo questions of law.[4] We review findings of fact for clear error.[5]

---

[3] The district court modified the award "on the grounds that specific performance [was] impracticable," excluding the portions of the arbitrator's award requiring Paradies to use Brothers' marks in the branded airport shop and to pay the license fee from June 2020 until October 2026.

[4] *Prescott v. Northlake Christian Sch.*, 369 F.3d 491, 494 (5th Cir. 2004).

[5] *Id.*

No. 21-30225

## III.

Because it is not clear whether there is an arbitration agreement, we remand for the limited purpose that the district court make this determination.

Under the Federal Arbitration Act (FAA), if the party against arbitration puts "the making of the arbitration agreement . . . in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue."[6] While we have "not established the precise showing a party must make" to put the making of the arbitration agreement in issue, a party "must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true," and "he must produce at least some evidence to substantiate his factual allegations."[7]

Paradies has met this burden. First, the contractual language in the LOA and Addendum suggest that the parties planned to execute a definitive license agreement in the future and that Exhibit B was provided merely as an example license agreement.[8] Second, Suttle testified that Paradies

---

[6] 9 U.S.C. § 4.

[7] *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992) (citation omitted). *See also Chester v. DIRECTV, L.L.C.*, 607 F. App'x 362, 364–65 (5th Cir. 2015) (per curiam) (finding that a party met this burden when he introduced an affidavit claiming that he did not remember signing an arbitration agreement and that, had he been given an arbitration agreement, he would have not signed it unless he was threatened with termination).

[8] The Addendum provides that "If Paradies is awarded a master lease . . . then Paradies and Licensor will negotiate in good faith a definitive product supply and license agreement (the 'License Agreement')." The Addendum also referred to Exhibit B as "the form of License Agreement to be utilized by the parties."

No. 21-30225

"deliberately did *not* offer [the license agreement] contract to Brothers." Finally, Suttle sent multiple emails to Brothers during the document exchange suggesting that the parties intended to formally execute a license agreement at a later time.

The district court's hearing was insufficient to determine whether there was an arbitration agreement after Paradise put the making of an arbitration agreement in issue. The district court only considered "the materials that [the parties] supplied . . . in connection with the original complaint, the motion for injunctive relief, and the responses as well as replies." Additionally, the district court failed to revisit this issue later as it believed it already determined that there was an arbitration agreement at the preliminary injunction hearing. This hearing fell short of the trial contemplated by the FAA after a party puts the making of an arbitration agreement in issue.[9]

## IV.

Accordingly, we REMAND for the limited purpose that the district court determine whether there was an agreement to arbitrate.

---

[9] *See* 9 U.S.C. § 4. For example, in *Chester*, after the party put the making of the arbitration agreement in issue, the district court held a bench trial to determine whether there was an arbitration agreement, considering both submitted evidence as well as testimony from witnesses. *Chester*, 607 F. App'x at 365–66.